We'll turn to argument next in number 22 4 59. C. C. v. New York City Department of Education. And I'll wait for council to come to the front of the room. Okay. Mr. Kopp, whenever you're ready. Good morning, Your Honors. May it please the court. One of the primary aspects to recall about this case is that after hearing on undisputed three years of denial of fate for consecutive school years, the parent did everything right here. And quite frankly, the final decision by the hearing officer did not, in fact, impose many, if any, obligations upon the parent to do this. There was no notice that the parent was going to have to go out and seek a school for the student. There was no notice that creating or maintaining the bank of compensatory education was going to be part on the parent. Or that if the parent went out and offered up a private provider, that any of those obligations would all of a sudden turn to her. I'm a little confused. What did your client think was going to happen once the order was provided for the 1280 hours of tutoring between up to August 21? The plain language of the final. What was the expectation? The expectation was that the DOE would create this bank of hours that was to include a professional, which the DOE is able to go and contract with private providers and they regularly do so. But you're saying that after they got the order from the hearing officer, the family was waiting for the school district to contact them and say we've set up the bank and you can go to this particular provider? Yes, Your Honor. But the order doesn't say that the school district has to identify the particular provider. This is JA-64. It just says, I conclude that this total bank of 1280 hours, one-on-one tutoring services at market rates with a duly certified special education teacher or reading specialist. This bank is to be drawn upon by the family. It says at such times and in such locations as they deem practicable. Right. Correct, Your Honor. So where does it say that the school district is supposed to identify the provider? It's part of creation of the bank, Your Honor. Well, let's wait for a second here. Six months goes by before finally the child starts to get the tutoring, correct? Correct. There's nothing in the record that says that there was any effort made by you or anybody else with regard to that student in identifying this problem. And I'm not, you know, same thing for the school district. Why did everybody wait just six months? This is a case that you litigated because you claimed the child had not had adequate services for three years. You won. Great. And then everybody sits around and waits six months. Everybody's waiting for somebody else to do something? What's going on? Tell me. There's nothing in the record about what you or anyone else from your firm did. Why it would be very easy to make a phone call. This is a child that needed services and won services. That all the child had to do was go to an appropriately certified professional. And the family could then draw upon the services. But no one did a thing for six months. I'm not blaming the child, but I do wonder what you were up to. What were you doing? Waiting for the school district call? At that point, Your Honor, there were other implementation issues going on along with the finding the school. It was our understanding that the school district was at least going to wait for. You asked for an injunction and not a word about what you did for six months to try and solve this problem. You're offered an extension of the services, and you reject the settlement because you want to add additional hours because you think the child has additional needs, but you don't want to have to go through a due process hearing, notwithstanding the fact that the IHO's decision specifically says that if additional services are needed, you'll go through the appropriate due process procedures. I'm upset. You can tell. This is a child that has specific needs, and yet here we are listening to everybody blame everybody else about why this didn't occur. And yet there's nothing in the record that tells me what you did for six months to try and straighten this out. Did you do anything? Did you make a phone call? The answer is no, isn't it? Right. Okay, the answer is no. So you did nothing. So you come to a court, you get in front of a magistrate, and then you're in front of a district court judge. And now you're at the Second Circuit, and you're telling three judges, three articles, three judges, that you did nothing, but you think that you're entitled to an injunction because the school district apparently didn't make the call and it's their fault. The school at the time was being found in this matter. We were trying to ensure that that was being done. Your order was crystal clear when the school district was supposed to do things. Other parts of the order specifically direct the school district to procure services or to do other aspects of it. It's quite clear from the order. Yeah, well, can I ask this question? So eventually when services were started in November, how did they get started in the school, started paying for it? The family contracted with the provider, right? Yes, Your Honor, and this was one that typically a wealthier family would be able to. So what was it that happened in between May and November that led the family to believe they could just go ahead and do that? It was really a judgment call to try to see if the DOE would be willing to provide reimbursement because there's nothing in the order that says that reimbursement would be provided. Well, they created a bank of hours, didn't they? Didn't they create a bank of hours? They were supposed to create a bank of hours with a provider, but we were not given notice that the provider was. So that the bank can be drawn upon by the family at such times in such locations as deemed practical. Yes. May I ask? Go ahead. My understanding, you just referred to reimbursement, is that this provider, having already had a relationship with the Department of Education, would bill the Department of Education directly, not the family and then reimbursement, or did I misunderstand something? That is correct. My understanding is correct, that the provider billed DOE directly. Yes. So there was never any out-of-pocket by the family. So I'm not sure reimbursement is a very apt word here. What's your point? Typically what would happen with a wealthier family is they would be able to go seek the self-help and end up paying the provider out-of-pocket and then go seek reimbursement. But here what had to happen was that the private provider was engaged and said, well, we need the private provider to take on some amount of risk. The provider was really only able to provide a few hours per month. There's some kind of process where they have a relationship with the Department of Education. You're before this Court challenging the denial of a preliminary injunction. What is it you want from us? With the amount of the impact that this would end up having on the remainder of the claims below and in addition to. . . I'm not sure I understand why there has to be injunctive relief. There's still hours to be used, right? Or, again, am I mistaken? You are right that there are hours to be used. So why don't you use those hours, litigate your case, and then you'll see what relief you have or have not obtained. Why do you need a preliminary injunction at this point? Help me out. There is a deadline for August 31st of 2021. And so now there's going to be no more extra services at this point. Is that what you're saying? Correct. Well, but there was an offer to extend the deadline to 2023, and you rejected that. That was . . . Right? Right. Okay. So, to some degree, this is a problem of your making, right? Because you rejected it because you wanted to add additional hours because you felt that . . . You expressed the concern that because of the absence of some of the tutoring, that there were additional needs that the child may have, correct? Partially, Your Honor. The other aspect of that, too, is that the hearing officer's decision was very clear that this was supposed to be a dynamic and flexible remedy for the student. That there was supposed to be the neuropsychological update, which was had, and that . . . Was that done? Yes. Okay. And the evaluator came back and said that more hours were needed. And didn't he leave open the possibility that that might occur and that what should then occur would be another hearing in front of another officer, if you couldn't work it out with the Committee on the Handicap? No, we don't believe that another hearing would be possible at that juncture because, at this point, the three school years at issue would already be raised judicata. We've had the DOE come in in several instances and say that if a particular amount of compensatory education is supposed to go toward a particular set of school years, then you have to determine the statute of limitations based off of those school years that the compensatory education is being awarded for. But in this individual case, whether you're entitled to an injunction depends on you being likely to succeed on your claim that the school district was obstructing or undermining the hearing officer's order, right? Not necessarily obstructing, but most certainly delaying. By not coming forward with the bank and on the back end by cutting it off prematurely. That's your claim, right? Yes. Now, did the school district do anything to lead the family to the expectation that they had to wait until November to start the services or start drawing down the bank? The understanding on our part was that since the school was working on trying to get the nonpublic school established and the parent was able to collaborate with the DOE on that aspect, the bank would at least be worked out within that time. So it was our understanding that after all this time had passed, we had been able to get the nonpublic school. We were able to say, well, wait, why isn't the compensatory education starting? Why don't we have notice of this yet? We tried to go forward and say, here's somebody that we're offering as a private provider, and we want them to try to come in with- So when you say that you were trying to say, why hasn't this started yet, did you communicate that to the school district? Yes. And what was the response? We did not receive a response until April after, I believe it was, three or four follow-up emails. And at that time, the district came back and said, well, okay, here's your authorization. They ended up saying this to the provider, and the provider eventually relayed that to us. One of the more problematic aspects of this, however, was that when that authorization came to us in April of 2021, it was backdated to May of- or sorry, when that authorization came to us, it was dated April of 2020. And it was then backdated for authorization to have begun in May of 2019. However, the DOE at that time was also saying that they can only authorize within a two-year block. And so that's how we ended up having this cut off. The letter said it's authorized until April 2021, but then it also says it can be used until August 2021, right? It says that. I understand why that's confusing, but I guess I have this question. When you finally emailed the school district and said we're supposed to have this until August 2021, did they not write back very quickly and say, yes, that's because we can only authorize in two-year increments, but we will authorize it through August 2021? Yes, and at that point, we were in federal court already, so we were having those communications directly with opposing counsel. Let me ask, you agree that our review of the denial of the preliminary injunction is for abuse of discretion, right? Yes. Okay. And also that to succeed in getting the injunction, you had to show a likelihood of success on the merits. Substantial or clear likelihood of success on the merits. Yes. Yes. How do we find abuse of discretion in light of all of the discussions we've been having about what the order provided and you're in action for six months? How do we find that the district court abused its discretion in finding that you hadn't carried your burden on likelihood of success? I mean, the courts have regularly stated that the DOE and any school district has the obligation to implement final unappealed orders. We would have understood at first if the DOE wanted to say, well, okay, we have 40 days to appeal this to the state review office. No, no, I may not be being clear. I mean, if you had, after two weeks of getting the order, gone to the same provider you went to six months later, the child, it seems to me, would have gotten the tutoring. So how do we say that you have shown a likelihood of success on the merits such that not finding it was an abuse of discretion by the district court? In other words, that the district court was obliged to find that you were likely to succeed on the merits of this claim, given the inaction that the record demonstrates? I mean, even if we had hypothetically reached out to Kid Success much earlier, even say in June or July, we still hadn't been receiving any response from the DOE for several months until after COVID started. So at this point, it's very difficult to even say that Kid Success would have been able to do more than what they had been doing for that initial five months, which was about three hours a month, as opposed to- So that I'm clear, do we have in the record communications in that six-month period from you or your client to DOE? Not in the six-month period between May and November. Well, you just argued to us that you had been trying to get information from them, and I didn't see any of that in the record. The absence of that is part of the problem for you in demonstrating that you were, in advancing an argument, that, well, they were not responding to us. You didn't ask them anything in that period, or am I mistaken? Well, it was one of the- Just before you explain why, were you asking them for anything during that period? We didn't need to. Okay. That was one of the undisputed aspects, that we knew that the nonpublic school was already being discussed between our client and the DOE. The nonpublic school was being found, and the student was eventually placed at a nonpublic school. And that was one of DOE's obligations. So we were able to believe that the DOE was going to be in the process. There's another concern in the record here, which is even after the child was enrolled in the special tutoring provider program, there was either missed appointments or not making appointments. The mother explained this because the child was tired or other things. But there was not an adherence to a strict schedule even during that period, right? Yes, Your Honor. So, again, how does that affect our ability to find that you are likely to succeed on the merits on a claim that this should be extended, that as a matter of law, this should be extended? This was one of the unforeseeable circumstances that the IHO issuing a decision in May of 2019 wouldn't have been able to understand that COVID was going to approach, that the student was going to lose all of this time with remote learning. And at the end of the day, the child was going to be more exhausted once she returned. Is this a child whose education is pursuant to IEPs? Yes. Okay. So each year there is a development of an individual plan for this child? Yes, Your Honor. And is that taking into account her particular needs? I mean, because everything we're talking about is supplemental to make up for past deficiencies. But right now she's getting supplemental tutoring or not? No, Your Honor. What is she getting as part of her IEP? She's basically getting the same program that the DOE has been recommending to go along with the nonpublic school. Everything else along with the supplements. She's in a nonpublic school with a special program for her? Yes. Okay. Okay. Thank you, Mr. Coffey. This is your time for rebuttal, so we'll hear from you again. But let's turn to the appellee, Ms. McCampbell. Good morning, Your Honors. May I please support Amy McCampbell on behalf of the Department of Education. Your Honor, a plaintiff agrees that in order to show entitlement to a mandatory preliminary injunction that modifies the status quo, they need to show a clear or substantial likelihood of success on the merits. And here a plaintiff hasn't shown that for two main reasons. First, the language of the IHO order doesn't support the plaintiff's argument. And second, the factual showing also doesn't hold up. The plaintiff argues that DOE is responsible for the low rate of tutoring, but again, their factual showing doesn't add up to that. The language of the IHO order required DOE to provide a bank of tutoring hours, and that's exactly what DOE did. DOE paid all the tutoring invoices that were submitted to it. Therefore, DOE fully funded this student's tutoring. There's no doubt. Actually, DOE only started paying invoices in May 2020, right? Yes, Your Honor. The first invoices were submitted in April 2020, and DOE processed and paid them the following month. Even though the tutoring had begun in November. Yes. We don't know why there was a gap in the submission. We know that DOE's affidavit says that the first invoices were submitted in April 2021, which was a typo because the plaintiff says that they were paid in May 2020. And then at the hearing on page 166 of the joint appendix, DOE's attorney clarified that the first invoice was submitted in April 2020. Isn't it reasonable for a family to think that maybe the school district should have told them we've established this bank? Why would the family have known that they should go out and find a provider and set it up themselves? Sure, Your Honor. So there's nothing in the record to support the inference that the plaintiff needed help finding a provider. The plaintiff submitted an affidavit, and she never said in her affidavit that she needed help finding a provider. When the plaintiff's attorney reached out to DOE in November 2019, page JA 115, 116, they had found a provider, Kid Success. They never reached out to DOE asking for help in finding a provider. So the plaintiff tries to make this inference that they needed help here, but again, there's nothing in the record to support that claim. There's certainly no clear substantial showing that the gap here was attributable to DOE. Moreover, DOE maintains a website that provides clear guidance for parents on how to obtain payment for services that are awarded at IHO hearings. Well, the litigation had been about the need for these types of services. This was one aspect of what the hearing officer's opinion addresses. I mean, it's a very lengthy and detailed – I mean, he really gets into the weeds on this stuff. And so the family had – I mean, again, I'm not casting dispersions on anybody, and I don't want counsel to think I was, but it seems odd to me that – and my colleague asked, you know, why – it would seem to me at some point in time DOE would wonder, too. I mean, you had this litigation, and nobody talked to anybody for six months about, you know, geez, we haven't had anything out of the bank. Of course, maybe it's numbers. Maybe that's what's involved. But the litigation had centered on the need for these services, and so the family at least had a sense that this is something she needed. And as you say, the family had suggested – had identified a service provider. Is that correct? By November 2019, yes. Okay. And again, the DOE's website has clear guidance on how families can get either reimbursement for services that were already provided, that were found DOE needed to reimburse for, or payment for services in the future, which is what occurred here. So it's – and moreover, Your Honor, it's undisputed that plaintiff's counsel is an expert in IDE litigation and frequently represents clients in IHO hearings and was familiar with DHO's practices and procedures. The identified tutor provider, Kid Success, was also very familiar with DOE policies and procedures. Kid Success began to invoice DOE on its own vendor forms and consistently prepared those vendor forms for November through April and going forward after that. So there's no showing that there was any confusion here about what needed to be done. Plaintiffs are relying, again, entirely upon speculation and inferences, but they haven't adduced a clear record that anything that DOE did was responsible for the low rate of tutoring here. Do you want to speak to the request that they want services – hours beyond the original hours that were ordered? So that's not an issue for their preliminary injunction motion, Your Honor, but I do think it does get to the balance of the equities because here DOE did quite reasonably offer to extend the deadline to allow the student to use the hours that was left in the bank, and the student rejected that offer because she wanted to pursue her – the family wanted to pursue the claim for additional hours on top of the hours that were – that hadn't been used. There were about 1,000 hours left in the bank by the time the deadline expired, and that's not necessarily anyone's fault. That was an outcome that the IHO order contemplated. It was a maximum bank of hours, and the IHO said that the student might not be able to use all of them. The language was even sponges reach a saturation point, and that's what happened here. So the fact that not all the hours were used, again, is not necessarily anyone's fault, but the fact that the student still continues to press for even more hours when she has so many hours that were not used by the expiration, it certainly speaks to the balance of the equities. All right. So in sum, Your Honors, the plaintiff hasn't shown a clear substantial likelihood of success in the merits, as the magistrate and the district court both agreed, and the other factors for the PI test also don't favor the plaintiff. Can you say something about the standard of review of the district court reviewing the magistrate judge's decision? Sure, Your Honor. So regardless of the standard of review that should have been applied, this court does not need to remand the district court to order a duplicative review because this court has the full record before it and can conduct its own review, and we cited several cases in our brief on that point. Plaintiffs didn't have a response to that in their reply brief. So you're not disputing that the review by the district court should have been de novo? I think that is correct, Your Honor, but it doesn't need to be remanded for a duplicative review at this point. We can do the same review ourselves. Exactly, Your Honor. There's nothing missing from the record here. The transcript is in the record. There's no reason to remand to the district court to repeat when everything is before this court. All right. So for these reasons, Your Honor, we ask this court to affirm the denial of plaintiff's motion for a preliminary injunction. Thank you. Thank you very much, Ms. McCampbell. We'll turn it back to Mr. Kopp on rebuttal. Thank you, Your Honor. I believe one of the main points with bringing up the paid invoices is that we really only ended up seeing a quick declaration that stated a wrong time period for when invoices were submitted. We did check back with the provider. This wasn't part of the record, but we did have a showing from the provider eventually that these invoices were starting to be submitted around January of 2020. And it may have been that the DOE just didn't get to them. We do understand that COVID began to happen. There were a lot of processing issues. But at that point, it really speaks to it that the payments still didn't go through until even May. So a year after this IHO's decision was issued. Was your client denied counseling services because of nonpayment? She was limited in the amount of services. By the way, I don't find anything in the record that kind of ties to nonpayment or this disconnect between the payment of vouchers and the type of services she got. I know that you assert that, but I don't see any particularization of that. The part of that in the record, Your Honor, are the invoices themselves. That for the first five months before the agency was getting paid on these invoices, they were really only doing three hours a month. There's nothing from KIDS Success that says that, is there? No, Your Honor. So how are we supposed to know this assertion? You make this assertion that she was getting less than what she was entitled to, and you base that upon what KIDS Success told you. But you don't put anything in the record from KIDS Success. This is secondhand from you, right? Well, this was the decision. And you're asking for relief from the court. I mean, I don't understand. Why isn't there an affidavit from somebody at KIDS Success saying, because we weren't being paid, we couldn't do this, we couldn't do that, we couldn't do this? It was primarily a timing issue. We were able to get a statement from our client about what the agreement was, and we had the invoices. It seemed duplicative at that point to try to waste even more time trying to work with KIDS Success's schedule to get an affidavit. But your assertion is that she got less than what she was entitled to because of the delay in the payments. It was part of the agreement that the services were going to be limited until KIDS Success started getting paid. How were they limited? But you don't offer any proof as to how they were limited. Maybe you could explain that. How were they limited? Based on our client's testimony, it was that the agreement was going to be that KIDS Success was going to provide a couple of hours so that there could be an invoice. And by simply having an invoice, then KIDS Success would have something to submit to DOE and see if DOE would actually go through and reimburse, well, not necessarily reimburse, but actually directly pay the agency based off of that. And what we would end up seeing if KIDS Success had started providing the full range of this is that then DOE would be able to come back and say, well, you weren't authorized to provide those hours. So it really shouldn't be able to cut both ways, and this goes to the equities of it. On the one hand, we come in and we say, you know, we tried to provide these more limited invoices so that we could test the waters with DOE, see if they were going to agree to this type of payment when we don't know if they've set the bank yet. And on the other hand, if we provide the full hours, the DOE comes in and says, well, we're sorry, that wasn't authorized. But why do you think they wouldn't have paid it if they were under the order from the hearing officer that they had to? Because DOE does have its own particular procedures that they do have to. So you're saying they might have disputed the use of the vendor. Yes. And they would have insisted on a different one. They may not have necessarily disputed the provider themselves, but they would certainly have disputed the fact that this provider wasn't authorized yet based on their procedures, that they do have this authorization mechanism in place to make sure that the accounting of what hours are there and what hours are being used are all going in tandem. We would ask that the court take judicial notice of one particular docket that did come up with the magistrate judge's decision. That would be LV versus New York City Department of Education, Southern District of New York, 1-0-3-CV-9917-LAP-KNF. This is a class action lawsuit of which our client is automatically a part based off of a 2005 decision that was going toward implementation on IEPs. Maybe you could send us a letter. Yes, Your Honor. That just explains what you think the relevance of that is to this case. Yes, Your Honor. No more than three pages by the end of the week. Yes, Your Honor. I can do that. Okay. And if the department wants to respond, you can respond by the next week. Okay. All right. You want to wrap up your argument? Yes, Your Honor. Your Honor, just very briefly on the hours beyond, we would just simply say that these were supposed to still be contemplated by the order. And that by rejecting the DOE's offer to extend the date even further, this was just simply going to keep the student restricted to what she was able to receive. What's the status of the underlying action? Currently, it stayed pending a decision in this appeal. At whose request? I believe that was a joint request, but I could include that in my letter. I'm just wondering why. The underlying action proceeds whether there's an injunction or not, no? Your Honor, one of the primary aspects of the other claims was the additional compensatory education. But if the preliminary injunction is thrown out, then the court is more likely to go along with its analysis and essentially the law of the case under the denial. Your Honor, the fact that you didn't carry your burden at the preliminary injunction stage doesn't preclude you from trying to make your record on a full trial record, does it? I'm just concerned that no one seems to have much urgency about this case. And as Judge Wesley pointed out, we are dealing with a child who needs special education services. And I'm just perplexed at why at all stages no one seems to be pushing the merits forward. Okay, thank you. Okay, thank you very much, Mr. Kopp. The case is submitted.